FILED
IN CLERKS OFFICE
U... N.Y.
MAY 16 2005
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

LOUIS EFFERSON,

                Petitioner,

  -against-

THOMAS POOLE, Superintendent,

                Respondent.
X
-------------------------------------------------------------

04 CV 5078 (ARR)

NOT FOR
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

The pro se petitioner Louis Efferson ("Efferson" or "petitioner") brought the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 18, 2004. Petitioner claims that: (1) he was denied his due process rights by the prosecutor's comments during summation; (2) he was denied the effective assistance of trial counsel; (3) the verdict was against the weight of the evidence; and (4) the evidence of guilt was legally insufficient. For the reasons stated below, the court denies the instant petition for a writ of habeas corpus.

## BACKGROUND

Petitioner was convicted following a jury trial of first degree rape and first degree sodomy. On August 1, 2000, he was sentenced to concurrent twelve year terms. Petitioner appealed his conviction to the Appellate Division, arguing that he had been denied his due process rights by the prosecutor's comments during summation. The Appellate Division affirmed petitioner's conviction by order dated December 30, 2002. Efferson v. Poole, 300

1

A.D.2d 674 (2d Dep't 2002). The court ruled that, "[t]o the extent that [petitioner's] objections were preserved for appellate review, the prosecutor's challenged remarks for the most part either constituted fair response to defense counsel's summation or were cured by the court sustaining defendant's objection and providing instruction to the jury." Id. (internal citations omitted). The court further found that "[t]o the extent that any inappropriate remarks remained uncured, they were harmless in light of the overwhelming evidence of [petitioner's] guilt." Id. Petitioner thereafter sought leave to appeal to the Court of Appeals, which was denied by order dated March 7, 2003. People v. Efferson, 99 N.Y.2d 628 (2003).

Petitioner filed a section 440 motion on October 22, 2003. In that motion, petitioner argued that: (1) he had been denied the effective assistance of counsel for trial counsel's failure, inter alia, to retain a medical expert or to request copies of reports relied upon by the prosecutor's expert; (2) the verdict was against the weight of the evidence; and (3) the evidence of guilt was legally insufficient. The 440 court denied petitioner's motion in its entirety by order dated June 2, 2004. Addressing the ineffective assistance claim, the court cited N.Y. C.P.L. § 440.10(2)(c), which provides that a defendant must raise a claim on direct review where sufficient facts appear on the record, finding that "[t]his statute mandates dismissal of defendant's motion since he did not litigate this issue on appeal." Respondent's Ex. E at 3. The court went on to rule that "defendant has not met his burden of showing that trial counsel provided him with ineffective assistance." Id. With respect to petitioner's other two claims, the 440 court concluded that "defendant has failed to show that the evidence of guilt was legally insufficient" and that "there was overwhelming evidence of defendant's guilt" before determining that "defendant's motion is denied pursuant to C.P.L. § 440.10(2)(c)." Id. at 4.

Petitioner thereafter sought leave to appeal to the Appellate Division, which was denied by order dated September 13, 2004. Respondent's Ex. F.

Petitioner's conviction became final on approximately June 7, 2003, ninety days after the Court of Appeals denied leave to appeal. The one year statute of limitations was tolled from October 22, 2003 until September 13, 2004, while petitioner's section 440 motion was pending. The instant petition is thus timely.

## DISCUSSION

I. <u>AEDPA Standard of Review</u>

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Supreme Court and

3

nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court...should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required...the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted). This deferential standard applies whenever the state court has adjudicated the federal claim on the merits, even if it did not explicitly refer to the federal claim or discuss the reasoning for its decision, as long as the decision finally resolved a party's claims and was based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

II.  Procedural Bar

Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989)). In order for federal review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." Id. (internal quotation marks and citation omitted). The Second Circuit held in Fama that where the state

4

court uses language such as "the defendant's remaining contentions are either unpreserved for appellate review or without merit" the claim is subject to federal review. Id. at 810-11. The court's decision in Fama did not overturn prior rulings, however, that a state court decision constitutes a procedural default where the court stated that a claim was "not preserved for appellate review" before ruling "in any event" on the merits. Id. at 810n.4.

Where a state court rules against a petitioner on procedural grounds, the petitioner faces a "procedural default" precluding federal habeas review. A procedural default may be excused by a federal court, however, if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). A petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

III. Due Process

Petitioner claims that the prosecutor engaged in pervasive misconduct during his summation. Petitioner argues that the prosecutor's comments "exceeded the bounds of acceptable adversarial conduct, impinged on defendant's right to present a defense and shifted

the burden of proof, and sought to convict defendant upon evidence not adduced at trial or subject to cross-examination." Petition at 6. Petitioner presented these claims to the Appellate Division on direct appeal. The state court ruled that "the prosecutor's challenged remarks for the most part either constituted fair response to defense counsel's summation or were cured by the court sustaining the defendant's objection and providing instruction to the jury." 300 A.D.2d at 674. The court went on to find that, "[t]o the extent that any inappropriate remarks remained uncured, they were harmless in light of the overwhelming evidence of the defendant's guilt." Id. Because the state court ruled on the merits, the court may grant habeas relief only if the state court decision was contrary to or involved an unreasonable application of Supreme Court precedent.

Under Supreme Court law, for a prosecutor's summation comments to justify habeas relief, they must be more than "undesirable or even universally condemned. The relevant question is whether the prosecutor's comments infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal citations omitted). Stated differently, because the improper remarks must cause "substantial prejudice" to the petitioner, Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991), only extreme examples of prosecutorial summations amount to "egregious misconduct" and raise a federal constitutional claim. Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974). Three factors are considered in determining whether a prosecutor's summation created substantial prejudice: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (internal quotations and citations omitted).

6

In the instant case, petitioner complains of several instances of alleged misconduct during the prosecutor's summation. First, the prosecutor stated that "people get away with murder often. Don't let this defendant get away with rape." Respondent's Ex. G at 570. Second, the prosecutor said of the defense theory that the complainant had framed an innocent man because she was scared that she might become pregnant, "[t]hat's the best they can come up with?" Id. at 569. Third, the prosecutor stated that the defense was "desperate" and had alleged a conspiracy among the complainant and the witnesses, including the law enforcement witnesses. Id. at 607-08. Fourth, the prosecutor stated that defense counsel had accused him of suborning perjury by calling witnesses to the stand who he knew would lie. Id. at 609. Fifth, petitioner claims that the prosecutor shifted the burden of proof by commenting that Pedro, who petitioner testified had been with him on the night in question, had not testified at trial. Id. at 603. Finally, petitioner complains that the prosecutor improperly commented on the petitioner's demeanor at trial, referring to him as a "con man" and a liar. Id. at 592-94.

An examination of the comments in the context of the entire trial demonstrates that they are simply not sufficiently egregious to warrant habeas relief. The trial judge instructed the jury immediately following the first challenged statement that petitioner's case was not a murder case and that his case had nothing whatsoever to do with any other cases. Id. at 570. The second challenged comment, the prosecutor's remark about the defense theory "[t]hat's the best they can come up with," id. at 569, was directly responsive to defense counsel's summation comments regarding the complainant's motivation to lie. The third challenged comment, that the defense was "desperate" and had alleged a conspiracy among the witnesses, was equally responsive to comments made by defense counsel during summation. During his

7

summation, defense counsel commented on the fact that the complainant was of Irish descent and that "all the police officers happened to be Irish. I submit to you that they were hell bent on saying or doing anything about this guy." Id. at 565. Defense counsel had also argued during his summation that the testimony of the prosecutor's witnesses was "designed so you will find him guilty." Id. at 563. In light of defense counsel's remarks, the prosecutor's comment that petitioner had argued that "there's some kind of conspiracy here," id. at 607, was properly responsive. As for the prosecutor's comment that defense counsel had accused him of suborning perjury, the trial judge immediately instructed the jury to disregard the prosecutor's comment and to focus on the evidence in the case. Id. at 609. Next, the prosecutor's comment that Pedro, who petitioner testified had been with him on the night in question, had not testified at trial did not shift the burden of proof because the defendant had presented evidence with regard to that witness at trial. Id. at 468-71; Peakes v. Spitzer, No. 04 Civ. 1342 (RMB), 2004 WL 1366056, * 18 (S.D.N.Y. June 16, 2004) (collecting cases). Finally, the prosecutor's comments that petitioner had repeatedly lied and was a "con man," while strongly worded, related to one of the most significant issues in the case. The fact that petitioner had told police a series of wholly inconsistent stories about the night in question and had testified during the trial made petitioner's honesty a key issue in the case that was fair game for argument by the prosecutor in summation.

Having considered the context of the prosecutor's comments, including the severity of the purported misconduct and the curative instructions issued by the trial judge, as well as the court's charge that the jurors were to rely on their own assessment of the evidence, the court cannot conclude that petitioner was deprived of a fair trial. The court thus cannot conclude that

the state court ruling was contrary to or involved an unreasonable application of Supreme Court precedent. Moreover, to the extent that the Appellate Division ruled that the prosecutor's comments "were harmless in light of the overwhelming evidence of the defendant's guilt," 300 A.D.2d at 674, the Second Circuit recently held that "when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied Chapman." Gutierrez v. McGinnis, 389 F.3d 300, 306 (2d Cir. 2004). The standard for harmless error established by Chapman v. California, 386 U.S. 18 (1967), is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24. In light of the overwhelming evidence presented at trial, the court cannot conclude that the state court unreasonably applied Chapman in making its harmless error determination.

Habeas relief is not warranted on this claim.

IV. Ineffective Assistance of Counsel

Petitioner claims that he was denied the effective assistance of trial counsel. Specifically, petitioner claims that counsel failed to offer expert medical testimony at trial, to conduct "any relevant research," and to "request copies of the underlying studies relied on by prosecution's expert." Petition at 7. Petitioner raised this claim for the first time in his section 440 motion. The 440 court cited N.Y. C.P.L. § 440.10(2)(c), which requires the court to deny a claim when sufficient facts appear on the record such that the claim could have been raised on direct appeal, and found that the "statute mandates dismissal of defendant's motion since he did not litigate this issue on appeal." Respondent's Ex. E at 3. Petitioner has attempted to show neither cause for the default and prejudice resulting therefrom nor that a miscarriage of

justice would result from the court's refusal to consider his claim on habeas review. His petition states only that "[c]ourt appointed appellate counsel neglected to consult with Defendant on this issue." Petition at 8. While the court would conclude that petitioner's claim is procedurally barred from federal habeas review, respondent has inexplicably failed to argue procedural default and has therefore waived that defense. Mask v. McGinnis, 233 F.3d 132, 137 (2d Cir. 2000); Trest v. Cain, 522 U.S. 87, 89 (1997). The court must therefore consider petitioner's claim on the merits.

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. There is a strong presumption that counsel's conduct fell within the "wide range of reasonable assistance," and a petitioner must overcome the presumption that the challenged actions might be sound trial strategy. Cuevas v. Henderson, 801 F.2d 586, 589-90 (2d Cir. 1986). Moreover, "[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001).

In the instant case, the 440 court denied petitioner's claim on an "independent and adequate" state procedural ground on the basis that sufficient facts appeared on the record such that the claim should have been raised on direct appeal, before ruling, on the merits, that

petitioner had failed to satisfy either of the Strickland prongs. Insofar as the court considers the 440 court's ruling to be a decision on the merits, the court must consider petitioner's claim subject to AEDPA's deferential standard of review. That is, petitioner would only be entitled to habeas relief if the state court's decision was contrary to or involved an unreasonable application of Strickland.

Petitioner essentially argues that an expert testifying on his behalf could have established that the absence of evidence of trauma in the victim's anus and vagina supported the defense theory that the intercourse had been consensual. The court notes, preliminarily, that petitioner's claim is substantially similar to the claims raised by the petitioner in Lindstadt v. Keane, 239 F.3d 191 (2d Cir. 2001). In that case, the petitioner had been convicted of sexual assault charges involving his minor daughter. There was no evidence that defense counsel had contacted an expert, either to testify on defendant's behalf or to educate counsel on the indicia of abuse, and counsel had failed to request copies of the studies relied on by the state's expert witness. Id. at 201-02. The Second Circuit reversed the district court's denial of habeas relief, remanding for the entry of judgment conditionally granting such relief. Id. at 206. Significant to the court's determination was the existence of at least one study available at the time of the petitioner's trial that significantly undermined the expert testimony offered by the state. Id. at 201. In light of this study, the court noted that defense counsel's failure to use an expert "allowed the prosecution to dress up the weak and inconclusive physical evidence in the trapping of [the doctor's] expertise." Id. at 205. The instant case is not parallel to Lindstadt. Perhaps the most salient distinction is that petitioner has not established prejudice. As a result, he has not stated a meritorious claim of ineffective assistance.

11

The doctor who examined the complainant on the night of the rape, Dr. Marina Artiokhina, testified that the complainant showed no signs of trauma. Tr. 289. The state's medical expert, Dr. Lorraine Giordano, confirmed that no trauma was discovered, noting, however, that instruments capable of detecting microscopic injuries were not used, and further testified that victims of forced anal or vaginal sex do not have signs of trauma visible to the naked eye in the majority of cases. Id. 391, 396, 398. Dr. Giordano testified that, in her experience, "[vaginal] injuries are seen in the vast minority of patients who are examined with the naked eye." Id. at 400. The doctor testified that the medical literature indicates that only ten to thirty percent of patients who have nonconsensual vaginal sex have injuries that are visible to the unaided eye. Id. at 398. Dr. Giordano also testified that, in cases of sexual assault involving anal sodomy, there exists a visible injury to the exterior of the anus in the minority of cases. Id. at 403-04. She cited a study indicating that approximately fifty percent of patients who have nonconsensual anal sex had injuries that were visible with a magnifying lense. Id. at 404.

The record does not reflect whether counsel consulted with an expert to explore the possibility of presenting expert testimony or to educate himself about the incidence of trauma in rape cases. Even assuming that counsel failed to do so, petitioner has provided no reason to believe that Dr. Giordano's testimony was controversial or that another expert witness could have refuted it or even significantly undermined it. Thus, unlike in Lindstadt, where petitioner demonstrated that the study relied on by the state's expert was contradicted or undermined by at least one study available to counsel at the time of trial, petitioner in the instant case has presented the court with no reason to believe that Dr. Giordano's testimony is inaccurate. As a

12

result, petitioner has not established that he was prejudiced by any purported failure on counsel's part.

Petitioner's claim that his counsel improperly failed to request copies of the reports relied upon by Dr. Giordano fails for the same reason. Petitioner has not established how obtaining the reports would have helped him at trial, much less that, had his attorney obtained the reports, there is a reasonable probability that the outcome of the trial would have been different. Unlike in Lindstadt, petitioner has provided no indication that the expert testimony presented by respondent could have been effectively undermined by other studies available at the time of petitioner's trial.

Finally, petitioner claims that his counsel was ineffective for failing to conduct "relevant research." Petitioner does little to elucidate the nature of his claim. His 440 motion sheds little further light on the claim, stating only that, given the amount of time that passed between petitioner's arrest and trial, "a year went by for which counsel could have invested this time dedicating all his efforts in preparing an effective defense." Respondent's Ex. C at 11. The court assumes that petitioner is reiterating his claim that counsel failed to consult an expert or request the studies relied on by Dr. Giordano, thereby rendering ineffective assistance. As analyzed above, petitioner has not demonstrated prejudice, failing even to allege how conducting more "relevant research" would have produced a favorable verdict. Particularly in light of the evidence presented at trial, petitioner would be hard pressed to argue that, had his counsel performed more research, there is a reasonable probability that the result of the proceeding would have been different.

Habeas relief is not warranted on this claim.

V.   Verdict Against Weight of the Evidence

Petitioner argues that the verdict was against the weight of the evidence. This claim is distinct from an attack on a verdict based on the legal sufficiency of the evidence. A "weight of the evidence" argument is a pure state law claim grounded in N.Y. Crim. Pro. L. § 470.15(5). People v. Bleakley, 69 N.Y.2d 490, 495 (1987) (weight of the evidence is based on court's factual review power; sufficiency of evidence claim based on the law). A legal sufficiency claim, on the other hand, is based on federal due process principles. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (Fourteenth Amendment requires record evidence to reasonably support a finding of guilt beyond a reasonable doubt). Accordingly, the court is precluded from considering petitioner's "weight of the evidence" claim. 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001) (finding that court could not consider "weight of the evidence" claim on federal habeas review); Kearse v. Artuz, No. 99 Civ. 2428, 2000 WL 1253205, *1 (S.D.N.Y. Sept. 5, 2000) (summarily dismissing challenge to verdict against the weight of the evidence on the ground that "[d]isagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief").

VI.   Legal Insufficiency

Petitioner claims that the evidence was legally insufficient to support his rape and sodomy convictions. The court notes preliminarily that petitioner raised this claim for the first time in his section 440 motion and that the 440 court denied petitioner's motion citing N.Y. C.P.L. § 440.10(2)(c). The court thus determined that sufficient facts appeared on the record to

14

raise the claim on direct review, thereby compelling the court to deny the claim. That decision constitutes a procedural default. As petitioner has attempted to show neither cause and prejudice nor that a fundamental miscarriage of justice would result from the court's refusal to consider his claim, petitioner would be procedurally barred from receiving habeas relief on this claim. As with petitioner's ineffective assistance claim, however, respondent has failed to argue procedural default and has thus waived the defense. As a result, the court must proceed to consider the merits.

Petitioners challenging the sufficiency of the evidence face a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). On federal habeas review, courts must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court must defer to the jury's "assessments of the weight of the evidence and the credibility of witnesses." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A court may only grant habeas relief if the petitioner has shown that, "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324 (emphasis added).

The evidence against petitioner was ample to permit the jury to convict him of both rape and sodomy. Under New York law, a person is guilty of first degree rape if "he or she engages in sexual intercourse with another person by forcible compulsion." N.Y. Pen. L. § 130.35[1]. A person is guilty of first degree sodomy if "he or she engages in oral sexual conduct or anal sexual conduct with another person by forcible compulsion." N.Y. Pen. L. §

130.50[1]. The evidence sufficed to permit the conclusion that petitioner engaged in sexual intercourse and anal sexual conduct with the victim by forcible compulsion. The victim testified to that effect, and the jury was entitled to credit her testimony and to discredit petitioner's. Moreover, the victim's testimony was corroborated by forensic evidence in that petitioner's semen was recovered from her vagina and her anus. Having considered the evidence in the light most favorable to the prosecution, the court cannot conclude that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Habeas relief is not warranted on this claim.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Signrd /
_____
Allyne R. Ross
United States District Judge

Dated: May 12, 2005
Brooklyn, New York

SERVICE LIST:

Petitioner *Pro Se*
Louis Efferson
00A4458
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403-3600

Attorney for Respondent
Morgan J. Dennehy
Kings County District Attorney's Office
350 Jay Street
Brooklyn, NY 11201